Labauve, J.
The plaintiffs claim of the defendants $7,792 28, tho' value of sixty-four bales of cotton, stored in the warehouses of the defendants at Jefferson, Texas, in 1861 and 1862, and which they refuse to deliver to the plaintiffs. They allege that said cotton was stored by their collectors and agent in the warehouses of defendants, who gave receipts therefor. That defendants, in violation of plaintiffs’ rights of property *400 and. their contract of storage, have delivered and disposed of, or shipped for their own account, the said cotton to some party unknown, and that now they refuse to deliver the same, pretending that they have delivered it to the agents of the so-called Confederate States Government, which is untrue. The answer admits the storage of the cotton, but avers that G. P. Evans, the agent of the plaintiffs, sold the 64 bales of cotton to the Confederate Government, who actually took actual possession of said cotton from the control of defendants, who are discharged from all responsibility.
The case was tried by a jury who gave a verdict in favor of defendants, and the Court, having overruled a motion for a new trial, gave judgment accordingly. The plaintiffs appealed.
We have carefully examined the testimony, which is very voluminous, and we are satisfied of the followering facts: That Evans, plaintiffs’ agent, was, under compulsion, obliged to sell the said cotton to the Confederate States, whose authority took possession of the same as well as of defendants’ warehouses, to store other cotton impressed and purchased by the Confederate authority. That the whole balance of the cotton in the warehouses, at the close of the war, was taken possession of and appropriated by the United Slates authorities, as being considered and viewed as property of the so-called Confederate States. So far then the defendants have shown a proper and legal excuse for not delivering the cotton, as bailee or depositary.
Now, to recover, plaintiffs must show that the defendants have used the cotton or disposed of it, or that it has been lost to the plaintiffs through the fault or neglect of the defendants; it is upon them that the onus probandi falls. There is nothing in the record showing that the defendants have been guilty of any such charge.
This case involves none but questions of facts, which have been solved in favor of defendants to the satisfaction of the Court below, and w'e are of opinion that plaintiffs have failed to make out a clear case.
It is therefore ordered and decreed that the judgment be affirmed, with costs.
Petition for a rehearing. — The plaintiff and appellants respectfully ask a rehearing on the following grounds:
The court states: “That the whole balance of the cotton in defendants’ warehouses, at the close of the war, was taken possession of and appropriated by the United States authorities, as being considered and viewed, as property of the so-called Confederate States.”
So far, then, the defendants have shown a proper and legal excuse for not delivering the cotton as bailee or depositary.
“Now to recover, the plaintiffs must show that the defendants have used the cotton or disposed of it, or that it has been lost to the plaintiff through the fault or neglect of defendants; it is upon them that the onus probandi falls.”
We have assumed this burden of proof, and the testimony we have furnished is of the highest character known to the law — the admissions and statements of the defendant himself. We refer to the testimony of Geo. P„ Evans, (pages 37 to 46 Record,) which testimony was not, and could not, be impeached; it was taken contradictorily with the defendant and filed in court six months before the trial of the cause.
Evans proves, that on the 24th day of May, 1865, Murnhy told him that he still had plaintiffs’ cotton in his possession. The Confederate *401 authority, at that time, hail ceased, and “Murphy said, that he would ship plaiutiifs’ cotton to J. W. Burbridge & Oo., at New Orleans, and direct them to hold the proceeds, subject to the decision of the Courts.” Evans immediately served upon defendant the notice, to be found at page 47 Record, (document A.) which was received by Murphy without response or objection. This is confirmed by th- testimony of S E. Mosely, (p. 92 Record). We ask the particular attention of the Court to this notice.
Now, this testimony shows that plaintiffs’ cotton was in defendants’ warehouse when the war ended, and had not be turned over to the Confederate authorities.
Now, the Court says, that the whole balance of the cotton in defendants’ warehouses, at the close, of the war, was taken possession of by the United States authorities. Let us see when this occurred, as proven by defendants’ own witnesses. In the Record, p. 121, the Court will find the order on which Murphy delivered 119 bales to the United States Treasury Agents; it is dated Marshall. Texas, July 15th, 1865. At p. 119, Record, will be found the order under which Murphy delivered 33 bales to W. Mc-Master; this bears date September 7th, 1865; and these two lots were all the cotton delivered by Murphy to the Government authorities. See testimony of Pitcher, Tucker and Stealey. Was plaintiffs’ cotton included therein? We have the positive evidence of the defendant himself to the contrary.
On the 12th day of July, Evans returned to New Orleans, for the purpose of getting plaintiffs’ cotton from Murphy, and when he demanded the same, Murphy told him that he did not have it, but had delivered it to the agents of the Confederate Government. See testimony of Evans, pp. 36 to 47.
At this time the United States authorities had neither taken, nor claimed a bale of cotton from Murphy’s warehouses. Therefore it is clear that the United States authorities never took a bale of plaintiffs’ cotton.
But the defendant admitted that he had that cotton in possession on the 24th of May, 1865, when the war was over, and Confederate authority had ceased. He was notified to hold the same for his bailors, the plaintiffs.
He says he is determined to ship it to New Orleans, to J. W. Burbridge & Co., for the courts to determine what shall be done with it. Does ne do so? Does he account for it at all? And yet, as bailee, he is bound to show what became of the property of his principal. He had the cotton on the '24th day of May, 1865; he did not have it on the 12th day of July, 1865; and yet during this period, he had free and undisputed control of his warehouses and property, without interference or hinderance from either defunct Confederate, or victorious National authority. It is for him to show what he did with plaintiffs’ cotton.
We show by the testimony of Eorrestier, (page 158 Record,) that during said interval of time, Murphy shipped to J. W. Burbridge & Co., for his own account, 251 bales cotton, and during the season some 1400 bales. This, he claims, was his own cotton. He should show why be did not ship plaintiffs’ cotton. He could not discriminate in his own favor. Where a warehouseman has his own goods in the same warehouse with those of his principal, and on losing a part, claims the part saved as his own, it is encumbent on him to show why his own goods were saved and not those of his principal.
We respectfully submit to the Court that the testimony above referred to will fully justify the Courtin graining arehearing and a reversal of the judgment. This Court can examine the facts, as well as the law, and correct error, of judges or juries. None but a formal application for a new trial was made below, plaintiff's being satisfied that the sympathies of juries at that time were with those who claimed to have suffered with the downfall of the fortunes of the Confederacy, no matter how much they enriched themselves in its dying hours.
Rehearing refused.